

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-15-00089-CV |
| IN THE MATTER OF A.P., a Juvenile. | § | Appeal from the |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 1401043) |

## **O P I N I O N**

A.P. was charged by petition with engaging in delinquent conduct by possessing a controlled substance (cocaine), having an aggregate weight of one gram or more but less than four grams, with the intent to deliver. A jury found that he had engaged in the delinquent conduct as alleged in the petition, and the trial court, after finding that removal from his home was in his best interest, committed A.P. to the Texas Juvenile Justice Department. In a single issue, A.P. contends that the evidence was not legally sufficient to support the jury's verdict. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

On the morning of October 14, 2014, El Paso Police Officer Luis Soto and several other officers were conducting surveillance of a mobile home. Officer Soto observed two individuals leaving the residence that morning. Subsequent searches of these individuals revealed that one

had over $1,000 in cash on his person while another was found in possession of crack cocaine. Officer Soto obtained a search warrant for the mobile home, which he and several other officers executed later that afternoon.

Upon entering the mobile home, Officer Soto observed A.P., who was 15 years old at the time, sitting at a small kitchen table with two adults. The officer saw three cell phones on the table, as well as a locked safe, which was within arm's length of A.P., and in closest in proximity to A.P. Inside the safe, the officers found a passport, some currency, and individually packaged bindles of crack cocaine. None of the occupants of the mobile home claimed ownership of the safe.

The officers also found two individually packaged bindles of cocaine under the table in plain view. One of the bindles contained four smaller packaged bindles of powdered cocaine, and the other contained five smaller packaged bindles of crack cocaine. Officer Soto described the bindles as being on the floor a few inches from where A.P. was sitting, well within his reach, and in closest proximity to him in comparison to the two other individuals. Subsequent forensic testing revealed that the contents of the bindles weighed more than one gram but less than four.[1] In its closing argument, the prosecutor explained that the possession charge against A.P. was based primarily on the bindles of cocaine that were found at his feet.

While executing the search warrant, the police searched the five individuals who were at the residence. One had a packaged bindle of cocaine in his pants pocket, while two others were found to each have over $1,000 on their persons. A.P. had approximately $140 on his person. The search revealed the presence of two mini Ziploc bags containing powdered cocaine in a

---

[1] The forensic scientist who tested and weighed the contraband testified that the bindle containing the powdered cocaine, which was found under the table, weighed slightly over one gram. She did not weigh the other bindle, as she is only required to test to "penalty," which in this instance, was anything over a gram.

2

backpack in the bedroom, a glass pipe used to smoke crack cocaine with narcotic residue on it in the living room, and individually-packed bindles of cocaine hidden in a stereo in the living room.

At trial, Officer Soto expressed his opinion that the occupants of the mobile home had been involved in an ongoing drug delivery operation at the time of the search. In part, his opinion was based on the fact that he had previously purchased narcotics at the mobile home, and the fact that the narcotics he had previously purchased were packaged in a similar manner to the narcotics that were found in the home at the time of the search, which he described as being "ready for distribution."

The jury found that A.P. had engaged in the delinquent conduct as alleged in the petition, by possessing a controlled substance in an amount over one gram, with the intent to deliver. At the disposition hearing, the trial court determined that A.P. was a juvenile in need of rehabilitation and that it was in his best interest to be removed from his home and committed to a secure facility, as his parents, who lived in Mexico, were unable to supervise him.

## SUFFICIENCY OF THE EVIDENCE

In his sole point of error, A.P. contends that the evidence presented at his trial was not legally sufficient to support a finding that he was in possession of any of the cocaine found in the mobile home, asserting that the "elements of care, custody, management and control were not supported by more than a modicum of evidence at trial." We disagree.

### Standard of Review

Although appeals from juvenile court orders are generally treated as civil cases, we apply a criminal sufficiency of the evidence standard when we review a delinquency determination. *Matter of M.L.M.,* 459 S.W.3d 120, 126 (Tex.App.—El Paso 2015, no pet.); *see also In re R.R.,*

3

420 S.W.3d 301, 303 (Tex.App.—El Paso 2013, no pet.) (applying the criminal sufficiency standard when reviewing challenges to the sufficiency of the evidence supporting a finding that a juvenile engaged in delinquent conduct). In juvenile cases, the burden is on the State to prove beyond a reasonable doubt that the juvenile engaged in delinquent conduct or conduct indicating a need for supervision. *Matter of M.L.M.,* 459 S.W.3d at 126 (citing TEX. FAM. CODE ANN. § 54.03(f)(West 2014)).

The legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In a legal sufficiency analysis, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *In re R.R.*, 420 S.W.3d at 303 (citing *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2788–89); *Burden v. State,* 55 S.W.3d 608, 612 (Tex.Crim.App. 2001)). On review, we do not resolve any conflicts of fact or re-evaluate the weight and credibility of the evidence. *In re R.R.*, 420 S.W.3d at 303 (citing *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000); *In re H.G.G.D.,* 310 S.W.3d 43, 46 (Tex.App.—El Paso 2010, no pet.). Instead, our duty is to determine whether the explicit and implicit findings of fact made by the trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Id.* (citing *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992)). If the record supports conflicting inferences, we presume that the fact finder resolved any inconsistencies in favor of the verdict and defer to that determination. *In re J.R.C.S.,* 393 S.W.3d

4

903, 910 (Tex.App.—El Paso 2012, no pet.) (citing *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000)). Although we consider everything presented at trial, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App. 2007); *see also Brooks*, 323 S.W.3d at 899; *King*, 29 S.W.3d at 562.

### Establishing Possession

A person commits an offense if he knowingly possesses, with intent to deliver, a controlled substance such as cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(A); 481.102(3)(D) (West 2010). The Texas Health & Safety Code defines "possession" as meaning "actual care, custody, control, or management." *Id.* § 481.002(38) (West Supp. 2016). In a case involving possession with intent to deliver, the State must prove that the defendant "(1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew that the substance in his possession was a controlled substance." *Cadoree v. State*, 331 S.W.3d 514, 524 (Tex.App.–Houston [14th Dist.] 2011, pet. ref'd); *see also Blackman v. State*, 350 S.W.3d 588, 594 (Tex.Crim.App. 2011) (citing *see Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App. 2005)). The State is required to establish the same elements in a juvenile case involving possession of a controlled substance. *See, e.g., In re J.M.C.D.*, 190 S.W.3d 779, 781 (Tex.App.—El Paso 2006, no pet.) (citing *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App. 1995)) (recognizing that in juvenile case involving possession of a controlled substance, the State was required to prove beyond a reasonable doubt that the juvenile exercised care, control and management over the substance).

5

Possession of contraband need not be exclusive, and it is sufficient if the evidence shows that an accused jointly possessed the contraband with another. *See Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App. 1988); *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref'd). When a defendant is not in exclusive possession or control of a residence where controlled substances are found, the State is required to provide independent facts and circumstances affirmatively linking the defendant to the contraband. *In re J.M.C.D.*, 190 S.W.3d at 781 (citing *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App. 1995)). This so-called "affirmative links" rule is intended to "protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Blackman*, 350 S.W.3d at 594 (citing *Poindexter,* 153 S.W.3d at 406); *see also Ramirez-Memije v. State,* 444 S.W.3d 624, 627 (Tex.Crim.App. 2014)(noting that the affirmative links requirement protects "innocent bystanders, relatives, roommates, or friends from being convicted for possession due merely to their proximity to another's contraband"). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *In re J.M.C.D.*, 190 S.W.3d at 781 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995)). Absent an affirmative link, a defendant's mere presence at a location where drugs are found is insufficient, standing alone, to establish the requisite degree of control to support a conviction. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).

In *Evans*, the Court of Criminal Appeals cited with approval the following list compiled by our sister court, which sets forth several non-exclusive factors that an appellate court may consider in determining whether an affirmative link has been established:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility

of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12 (citing *Olivarez v. State,* 171 S.W.3d 283, 291 (Tex.App.–Houston [14th Dist.] 2005, no pet.)). The court noted that this list was not intended to be dispositive, and that it should not be considered as a litmus test for determining a defendant's guilt; instead, the list was intended to simply set forth some of the factors that a court may consider as circumstantially establishing the legal sufficiency of the evidence to prove a knowing "possession." *Id.* Moreover, we note that the number of factors linking an accused to the contraband is not as important as their logical force in establishing the elements of the offense. *In re J.M.C.D.,* 190 S.W.3d at 781 (citing *Jenkins v. State,* 76 S.W.3d 709, 713 (Tex.App.–Corpus Christi 2002, pet. ref'd)). Therefore, "[t]he absence of various links does not constitute evidence of innocence to be weighed against the links present." *Satchell v. State,* 321 S.W.3d 127, 134 (Tex.App.–Houston [1st Dist.] 2010, pet. ref'd) (citing *Hernandez v. State,* 538 S.W.2d 127, 131 (Tex.Crim.App. 1976)).

The evidence establishing a link to the defendant may be either direct or circumstantial, and need not be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995); *see also Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex.Crim.App. 2005) (whether the State's evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's

connection with the drug was more than just fortuitous"). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *In re J.M.C.D.,* 190 S.W.3d at 781 (citing *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref'd)).

<u>**Analysis**</u>

A.P. contends that the State failed to fulfill its burden of affirmatively linking him to the cocaine found in the mobile home, and that he was merely present with no evidence to establish that he exercised any control over the cocaine found in the home. In support of his argument, he relies primarily on *Allen v. State*, 249 S.W.3d 680 (Tex.App.–Austin 2008, no pet.). That case is inapposite to A.P.'s situation.

In *Allen*, the defendant was babysitting in an apartment that was under surveillance for approximately 30 to 60 minutes, during which a police officer observed two individuals coming and going from the apartment. The officer believed this conduct was indicative of narcotic activity. *Id*. at 684. However, no search of those individuals was conducted. *Id.* A subsequent search of the apartment revealed, among other things, the presence of several small baggies of cocaine that were located on a platter on top of the refrigerator, along with a razor blade and a plastic knife. *Id*. There was no evidence that the defendant lived in the apartment, that she had any cocaine on her person, or that she was under the influence of cocaine at the time of the search. *Id*. at 685. On appeal from her conviction, our sister court noted that the State had the burden to establish more than just the defendant's mere presence in the location where the cocaine was found, and that the State had failed to meet its burden of providing sufficient evidence to affirmatively link the defendant to the cocaine. In particular, the court noted that none of the

8

cocaine was in plain view and that the only other link was the fact that the defendant's fingerprints were found on the underside of the platter on which the cocaine was found. *Id.* at 694-96. However, the court held that the fingerprint evidence, standing alone, was insufficient to establish the defendant's connection to the contraband, as there was no way of knowing when the fingerprints were placed on the platter and because there was no evidence of her fingerprints on the contraband itself. *Id*. at 703-04. In the absence of any other evidence affirmatively linking the defendant to the contraband, the court concluded that the jury's verdict finding that she was in possession of the cocaine was not supported by sufficient evidence. *Id*. at 704.

A.P. contends that like the defendant in *Allen*, the State admittedly found no evidence that he was living in the searched residence and/or that he had any ownership or other interest in the residence, making his presence in the mobile home simply "fortuitous." The resemblance between the two cases begins and ends with the fact that, like the defendant in *Allen*, A.P. did not reside at the location where the cocaine was found. But A.P. was observed to be in the mobile home for several hours, during a time when much more than just suspicious "foot traffic" was occurring, and when instead, confirmed drug-distribution activity was taking place. A police officer had purchased drugs at the mobile home on a prior occasion. During the time the home was under surveillance, two individuals left the residence in possession of large quantities of money and controlled substances. Large quantities of currency and narcotics -- packaged and ready for distribution -- were found in the mobile home. In fact, even A.P. acknowledges that he was present in a "suspicious place under suspicious circumstances" at the time the search warrant was executed.[2] We conclude that this evidence supported a reasonable inference that A.P. was

---

[2] A.P. finds it significant that the State presented no evidence that the mobile home was located in a high-crime area, or in an area with "high drug activity." The State was not obligated to provide such evidence, and it was clearly

9

involved in, or at the very least aware of, the ongoing activity that was admittedly taking place at the mobile home.

We also find it significant that A.P. was found sitting at a table in close proximity to at least two large bindles of cocaine which were packaged for distribution, both of which were in plain view. A.P. counters that the State failed to present any direct evidence that he could see the bindles from his vantage point at the table. But even he admits that the contraband was in plain view to the police when they entered the residence. While the State may not have presented direct evidence to establish that the contraband was in A.P.'s direct line of vision when the search took place, the evidence presented was sufficient to allow a jury to reasonably infer that the contraband was in a location visible to A.P., or in other words, in a location that was not hidden or secreted away. *See, e.g., Allen*, 249 S.W.3d at 694 (recognizing that contraband, which was clearly "secreted" in another room in a house, could not be considered to have been in plain view when search took place). We find these two factors among the most important in determining whether a reasonable jury could have inferred that A.P. maintained custody and control over the cocaine. *See, e.g.*, *Earvin v. State*, 632 S.W.2d 920, 924 (Tex.App.—Dallas 1982, pet. ref'd) (recognizing that, among the most important factors in establishing a defendant's possession of contraband, are the accessibility and proximity of the contraband to the defendant, as well as whether the contraband was in plain view); *see also Evans*, 202 S.W.3d at 163 (finding it significant that defendant was found sitting directly in front of fourteen grams of cocaine located on a coffee table less than a foot away from him within "arm's reach").

---

sufficient for the State to present evidence that the mobile home itself was clearly the site of ongoing drug activity, a fact that A.P. does not dispute.

The State's evidence clearly supported a finding that A.P. did not find himself in the midst of this ongoing drug operation by mere happenstance; he was instead an active participant in the ongoing drug distribution activities. He was found with $140 on his person, despite the fact that he appeared to have been unemployed at the time of the search, which suggested that A.P. was participating in, and profiting from, the drug operation. He was not only in close proximity to the contraband found at his feet, but was also found in close proximity to the safe that was located on the table, which contained not only additional amounts of cocaine, but currency and passports as well. More importantly, the officers conducting the search noted that there were three cell phones on the table -- one for each individual. When combined with the undisputable fact that ongoing drug deliveries were being made from the home, a reasonable jury could have inferred the cell phones were being utilized as part of this drug-distribution scheme, and that A.P. was part of this scheme.

A.P. argues that none of these factors, standing alone, was sufficient to raise a reasonable inference that he was involved in the criminal activity that he admits was taking place at the home, or that he maintained any control over the narcotics found in the home.[3] Our role is not to view each factor in isolation, and we must instead view all of these factors in their totality, and consider all of the State's evidence, in determining whether the State met its burden of establishing that A.P. maintained care and control over the cocaine found in the residence. *See, e.g., Evans,* 202 S.W.3d at 164, 166 (court of appeals erred by viewing each factor in isolation in determining whether

---

[3] For example, although A.P. acknowledges that the presence of multiple cell phones at the location suggested the possibility that the phones were being used as part of an ongoing narcotics operation, he complains that the State could not rely on the presence of the cell phone, standing alone, to support an inference that A.P. was part of any such activities. In particular, he complains that the State did not present any evidence to suggest that he owned any of the cell phones found at the location. But A.P. lodged no objection to the admission of the cell phones, and we believe that the State was entitled to rely on the presence of the cell phones as being one factor, among many, to tie A.P. to the ongoing drug activities taking place at the mobile home.

defendant maintained custody and control over contraband, explaining that the court was instead required to view the evidence presented at trial in "its sum total" in making that determination); s*ee also In re J.M.C.D.,* 190 S.W.3d at 782 (where accused was one of several individuals who were carrying backpacks containing narcotics, and no particular item of evidence directly linked the accused to the backpacks or the contraband, the evidence was nonetheless sufficient, when taken together, to support the jury's determination that the accused was guilty of possession).

We conclude that the logical force of the State's evidence was clearly sufficient to affirmatively connect A.P to the actual care, custody, control or management of the individually-packaged cocaine that was found at his feet, and to allow the jury to reasonably infer that he had the requisite intent to deliver the cocaine. The jury was therefore free to reject A.P.'s claim that he was simply an innocent bystander at the mobile home at the time the search warrant was executed. We overrule the sole issue for review and affirm the judgment of the trial court.

ANN CRAWFORD McCLURE, Chief Justice

January 27, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating