COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOHN MELVIN FOSTER, JR., | § | No. 08-22-00181-CR |
| Appellant, | § | Appeal from the |
| v. | § | 112th Judicial District Court |
| THE STATE OF TEXAS, | § | of Reagan County, Texas |
| Appellee. | § | (TC# 02013) |

## MEMORANDUM OPINION

A jury convicted Appellant John Melvin Foster, Jr., of possession of more than four grams but less than 200 grams of methamphetamine, a lesser-included offense of the greater offense of possession of a controlled substance with intent to deliver. In eight issues, Foster contends that: (1) the trial court erred by denying his motion to suppress due to a litany of complaints about a search warrant and its supporting affidavit; and (2) that the evidence was insufficient to support the jury's finding of possession of the controlled substance. Finding no error, we affirm.

## BACKGROUND

In a single indictment, Foster was charged on December 12, 2019, with the following three charges: (1) possession of a controlled substance, in a quantity of four grams or more but less than

200 grams, with intent to deliver; (2) engaging in organized criminal activity; and (3) endangering a child. The indictment followed the execution of a search warrant by the Reagan County Sheriff's Office at the Weatherby Ranch in Reagan County, Texas. In their search of the premises, officers recovered over 200 grams of methamphetamine from at least five different locations on the property.

Prior to trial, Foster's counsel filed on his behalf a motion to suppress the evidence obtained during the search. Among other things, Foster claimed the search warrant was issued without probable cause. The trial court held a hearing on the motion to suppress and subsequently denied the motion. No reporter's record from the hearing was included in the record on appeal.

At trial, Jason McGhee, a captain in the Reagan County Sheriff's Office between 2014 and 2019, testified about his involvement on the case. Deputy McGhee was the officer who signed the affidavit supporting the search warrant. McGhee testified that for three years prior to seeking a search warrant, he and other officers of the Reagan County Sheriff's Office actively investigated Foster on suspicion of alleged drug trafficking and distribution in the area of Big Lake, Texas. Authorities suspected the drug-trafficking operation was large in scope.

Foster lived at a residence north of Big Lake with his common-law wife of fourteen years, Lynn Weatherby. Their home was the main residence on five acres that are part of a 642-acre ranch owned by Weatherby and known as Weatherby Ranch. In addition to the main residence, the five-acre tract contained a bunkhouse and a barn with a saddle shop or tack room.

During their investigation of Foster, Deputy McGhee and Sergeant Nick Hammer developed information about Foster's operations from their drug investigations and through their questioning of arrested individuals. Further, McGhee had been to Foster's home on two occasions in 2017 prior to the search in question.

In late 2018 and early 2019, four cooperating individuals provided information to the Sheriff's Office about Foster's drug operation. In February and April 2019, the Sheriff received two anonymous letters alleging that Foster was bringing drugs into Reagan County from Arizona and San Angelo. McGhee testified that he did not believe he had sufficient information to seek a search warrant after receiving the first letter, but he did after the second letter, which contained more specific information about the location of methamphetamine on the Weatherby Ranch.

Due to safety concerns about violence and the firearms they had seen at the Weatherby Ranch, McGhee and other officers planned to execute a search warrant at a time when Foster was not likely to be present. Following a traffic stop that resulted in Foster's arrest for driving with a suspended license, McGhee sought and obtained a search warrant of the Weatherby Ranch. The search warrant was executed on May 15, 2019.

Lynn Weatherby was in the main house at the time of the search and a ranch hand was in the bunkhouse, where he lived. Deanna Kleinertz, a second ranch hand who also lived in the bunkhouse, arrived in her truck during the search. All individuals present and living at the ranch were detained during the search.

The officers executing the warrant found methamphetamine in various locations on the property: 162.71 grams inside the sleeping compartment of a Peterbilt truck-tractor; 21.5 grams green in color and in "crystal shard" form, a type usually purchased in bulk for distribution, in a locked gun safe inside the tack room in the barn; 17.5 grams in the bunkhouse; 15.14 grams in the main residence; and 0.786 grams in a Chevy truck between the main residence and the bunkhouse.

Guns lined the walls of the tack room, which had an electronic keypad for entry. There were also a large number of guns found in the gun safe, one of which had been reported as stolen. In addition to other firearms, the officers found a rifle in the Peterbilt, a second one in one of the

3

pickups on the property, and a third one in a bedroom. In all, there were approximately fifty guns found on the property. Foster estimated he had 100 or more guns at the time.

Authorities attributed to Foster the methamphetamine found in the gun safe, the Peterbilt, and the house. Although Foster was indicted on three counts, the State abandoned the organized criminal activity charge prior to trial. The State proceeded to trial on the remaining two charges, and before the jury was charged, the State agreed to a directed verdict on the child endangerment count. Of the three indicted counts, the jury was charged only with the possession with intent to deliver count, and the trial court provided the jury as well with two lesser-included offenses to consider: possession of four grams or more but less than 200 grams and possession of one gram or more but less than four grams.

The jury found Foster guilty of only the lesser-included offense of possession of four grams or more but less than 200 grams of methamphetamine. After hearing evidence in the punishment phase, the jury sentenced Foster to twenty years in prison and assessed a fine of $10,000. Foster's motion for new trial was denied by operation of law, and he appealed.

## ISSUES ON APPEAL

Foster brings eight issues on appeal. The first seven all challenge the search warrant on distinct grounds, while the eighth issue contends the evidence was insufficient to support the jury's

4

verdict.[1] We reorder the issues to address the sufficiency of the evidence first, then address the several issues all challenging the search warrant and the trial court's suppression ruling.[2]

**SUFFICIENCY OF THE EVIDENCE**

In his eighth issue, Foster argues there was insufficient evidence to support a jury finding of knowing or intentional possession of methamphetamine in an amount less than 200 grams but greater than four grams. Specifically, he complains the State failed to prove he had possession and knowledge of the methamphetamine located on the Weatherby Ranch. To this extent, he maintains the evidence affirmatively linking him to any of the methamphetamine is tenuous and legally insufficient.

### A. Standard of review

In determining whether evidence is legally sufficient to support a conviction, we must apply the well-known standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319) (finding no meaningful distinction between the legal and factual sufficiency standards and therefore no justification for retaining both standards). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so must determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.*

---

[1] In all seven issues, Foster refers to the search warrant of May 15, 2019, as the "First Search Warrant." Although we recognize that a second search warrant was later issued, Foster brings no issue challenging the later search warrant. Because only one search warrant is at issue in this appeal, all references to the search warrant refer to the search warrant of May 15, 2019.

[2] We reorder the issues in part to address those challenges first that would afford the greatest amount of relief, if meritorious, and in part for organizational clarity. *See Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010); *Carbajal v. State*, 659 S.W.3d 164, 179 n.4 (Tex. App.—El Paso 2022, pet. ref'd).

In considering the evidence, we keep in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Further, we are not permitted to reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). "Each fact need not point directly and independently to the guilt of the [defendant], as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* A jury "may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial." *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "[U]ltimately, the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

**B. Applicable law**

Knowing or intentional possession of methamphetamine is an offense under the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(a), (d), 481.102(6). For Foster's charge of possession of a substance in penalty group 1, the State was required to prove

the following elements beyond a reasonable doubt: (1) the defendant; (2) knowingly or intentionally; (3) possessed; (4) methamphetamine; (5) in an amount, by aggregate weight, including any adulterants or dilutants, of four or more grams but less than 200 grams. *See id.* §§ 481.115(a), and (d), 481.102(6); *Brown v. State*, No. 08-19-00073-CR, 2020 WL 4814207, at *2 (Tex. App.—El Paso Aug. 19, 2020, no pet.) (not designated for publication). Possession is statutorily defined as having "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38).

Texas courts have long used the "affirmative links rule" to determine whether sufficient evidence existed to show that the accused exercised care, custody, or control over the illegal drug the accused is said to have possessed, particularly when the accused is not in exclusive possession of the place where the drugs are found. *See Amancio v. State*, No. 08-19-00166-CR, 2021 WL 1921050, at *7 (Tex. App.—El Paso May 12, 2021, pet. ref'd) (not designated for publication); *Sandoval v. State*, 946 S.W.2d 472, 476 (Tex. App.—Corpus Christi 1997, pet. ref'd); *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.). "An accused must have exercised actual care, control or custody of the substance, and also must have been conscious of his connection with it and have known what it was—this affirmatively links the accused to the illegal substance and suffices to prove knowledge." *Amancio*, 2021 WL 1921050, at *7 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Requiring the State to prove the accused's "affirmative links" to the contraband is intended "to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *In re A.P.*, 512 S.W.3d 602, 606 (Tex. App.—El Paso 2017, no pet.) (quoting *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011)). A reasonable inference that the accused knew of the existence of the contraband and exercised control over it arises when an affirmative link is present. *Id.*

The Court of Criminal Appeals has cited with approval the following non-exclusive factors that may establish an affirmative link connecting the defendant to the knowing possession of contraband:

(1)  the defendant's presence when a search is conducted;
(2)  whether the contraband was in plain view;
(3)  the defendant's proximity to and the accessibility of the narcotic;
(4)  whether the defendant was under the influence of narcotics when arrested;
(5)  whether the defendant possessed other contraband or narcotics when arrested;
(6)  whether the defendant made incriminating statements when arrested;
(7)  whether the defendant attempted to flee;
(8)  whether the defendant made furtive gestures;
(9)  whether there was an odor of contraband;
(10)  whether other contraband or drug paraphernalia were present;
(11)  whether the defendant owned or had the right to possess the place where the drugs were found;
(12)  whether the place where the drugs were found was enclosed;
(13)  whether the defendant was found with a large amount of cash; and
(14)  whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)); *In re A.P.*, 512 S.W.3d at 607. A factor's logical force in establishing the elements of the offense is more important than the number of linking factors present. *In re A.P.*, 512 S.W.3d at 607. And "[t]he absence of various links does not constitute evidence of innocence to be weighed against the links present." *Id.* (quoting *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd)).

This affirmatively linking evidence "may be either direct or circumstantial, but it must establish that the accused's connection with the illegal substance was more than just fortuitous." *Amancio*, 2021 WL 1921050, at *7 (citing *Brown*, 911 S.W.2d at 747). "[T]he question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis." *In re A.P.*, 512 S.W.3d at 608.

8

## C.  Analysis

The jury heard testimony including from Foster that he and Weatherby had three different ranches, including the Weatherby Ranch. The couple ran commercial cattle and goat ranching. They also shared the same bank account. The couple's ranching business, along with oil and gas royalties and water sales, provided them an annual income varying from $500,000 to a million dollars a year. Although Weatherby owned the Weatherby Ranch, she routinely identified Foster as the person in control of the property, and Foster called himself the ranch manager. Foster controlled the movement of people on the ranch, the movement of property there, and who stayed on the property or lived there.

Foster admitted to using methamphetamine "on occasion" for about six years. Foster said he got his methamphetamine from San Angelo. The second anonymous letter described that Foster got his methamphetamine from San Angelo through a "hook" from Arizona and was getting a "gaggle" or "load" of methamphetamine from Arizona within days. The anonymous tipster informed the Sheriff of the "very hot spot" that was the locked safe inside the tack room in the barn, and methamphetamine was found there. The tipster also identified the kitchen in the main residence and the Peterbilt truck as "hot spots," and methamphetamine was found in both those locations. Foster denied knowing anything about any methamphetamine other than 1.7 grams found inside a lipstick case inside the main residence that he claimed to be his.

The Peterbilt truck was titled in Foster's name and had been on the property for at least a year before the search warrant was executed. Foster admitted he owned the Peterbilt—he said it was bought for the ranch. Foster testified that guns and a gun safe found on the ranch belonged to the ranch, but he also testified that he owned 100 guns at the time of the raid, and after the raid, Foster complained to McGhee that *his* guns in *his* safe were jostled around roughly.

9

The record contained evidence of the following affirmative links: (11) Foster owned or had the right to possess the place where the methamphetamine was found; and (12) the place where the methamphetamine was found was enclosed. We conclude the evidence, when viewed in the light most favorable to the verdict, supports Foster's conviction. A rational jury could have reasonably determined that Foster had the right to possess the places where the drugs were found— that is, the gun safe, the Peterbilt truck, and the kitchen in the main residence. *See Tate*, 500 S.W.3d at 414. And such jury could have found the evidence sufficient to sustain a finding beyond a reasonable doubt that Foster intentionally or knowingly possessed the methamphetamine in question. *See id.*, 500 S.W.3d at 417–18.

We overrule Foster's eighth issue.

## MOTION TO SUPPRESS

Foster contends in seven issues that the trial court erred in failing to suppress evidence obtained from the execution of the search warrant for methamphetamine. One of these issues claims the search warrant improperly authorized an unconstitutional search, while the remaining six present alleged deficiencies in the probable cause affidavit.

As a preliminary matter, we first address Foster's fifth issue, which was not raised in his motion to suppress or his amended motion to suppress.

### A. Preservation of error

In his fifth issue, Foster argues the Justice of the Peace who signed the search warrant lacked the authority to do so. Foster claims that because the Justice of the Peace was not a licensed attorney, she was without authority to issue a warrant authorizing the search and seizure of property

10

under § 18.02(a)(10) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. arts. 18.01(c), 18.02(a)(10).

Article 18.01(c) provides, in relevant part:

> Except as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals, including the presiding judge, a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court may issue warrants under Article 18.02(a)(10).

*Id.* art. 18.01(c). Moreover, article 18.02(a)(10) provides that "[a] search warrant may be issued to search for and seize . . . property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense[.]" *Id.* art. 18.02(a)(10).

Because Foster did not raise this issue in either his motion to suppress or his amended motion to suppress, he failed to preserve error for appeal. *See* TEX. R. APP. P. 33.1. Nothing in our record indicates that Foster raised this issue during the trial, and no reporter's record of the suppression hearing was made a part of the appellate record. Foster cannot, then, argue error in the trial court's failure to grant his motion to suppress based on a legal theory he did not assert in the trial court. *See Wright v. State*, 401 S.W.3d 813, 822 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Even so, Foster failed to address an exception to the general rule that judges who are attorneys must issue evidentiary warrants. Although Foster correctly states that generally one of the magistrates listed in article 18.01(c) must issue a warrant under article 18.02(a)(10), article 18.01(i) provides an exception:

> In a county that does not have a municipal court of record with a courtroom located in that county and a judge who is an attorney licensed by the state, a county court

11

> judge who is an attorney licensed by the state, or a statutory county court judge,
> any magistrate may issue a search warrant under Article 18.02(a)(10) or (12).

Act of May 24, 2017, 85th Leg., R.S., ch. 1035, § 1, 2017 Tex. Gen. Laws 4068 (amended 2019) (current version at TEX. CODE CRIM. PROC. ANN. art. 18.01(i)). Justices of the peace, such as the one who signed the search warrant here, are magistrates. Act of June 29, 2011, 82nd Leg., 1st C.S., ch. 3, § 6.06, 2011 Tex. Gen. Laws 5242 (amended 2019) (current version at TEX. CODE CRIM. PROC. ANN. art. 2.09). Although Foster argues the Justice of the Peace lacked the authority to issue the search warrant under § 18.01(c), he provides no citation to the record wherein he demonstrates the statutory predicates for a search warrant were not met. Thus, he has not properly briefed this point for review. *See* TEX. R. APP. P. 38.1(i). Without any further detail, the record merely shows that deputy McGhee testified he obtained a signed search warrant from a judge.

We overrule Foster's fifth issue.

**B. Probable cause**

We next address Foster's remaining six issues, all alleging deficiencies with the probable cause affidavit.

**(1) Standard of review**

We typically review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact while reviewing de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). A trial court's determination of probable cause to support issuance of search warrants requires no credibility determinations but is "constrained to the four corners of the affidavit." *Id.* We therefore apply a highly deferential standard of review to a magistrate's decision to issue a warrant, as there is a constitutional preference for searches conducted pursuant to a

warrant over warrantless searches. *Id.* If the magistrate had a substantial basis for finding probable cause existed, we must uphold the magistrate's probable cause determination. *Id.* We must not analyze the affidavit in a hyper-technical manner but in a commonsensical and realistic manner, "recognizing that the magistrate may draw reasonable inferences." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Id.*

### (2) Applicable law

Pursuant to the Fourth Amendment, probable cause supported by oath or affirmation describing the place to be searched and the things to be seized is required in order for a warrant to issue. U.S. CONST. AMEND. IV. Texas law requires that no search warrant shall be issued "unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." TEX. CODE CRIM. PROC. ANN. art. 18.01(b). In every instance requesting a search warrant be issued, a sworn affidavit must be filed and set forth substantial facts establishing probable cause. *Id.*

"Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location, and the facts stated in a search warrant affidavit are 'so closely related to the time of the issuance of the warrant that a finding of probable cause is justified.'" *Bellville v. State*, No. 08-13-00238-CR, 2015 WL 1735870, at *2 (Tex. App.—El Paso Apr. 15, 2015, no pet.) (not designated for publication) (citing *McLain*, 337 S.W.3d at 272).

"An affidavit supporting a search warrant begins with a presumption of validity[.]" *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003).

### (3) The supporting affidavit

Jason McGhee, a captain with the Reagan County Sheriff's Office, was the affiant for the probable cause affidavit requesting issuance of a search warrant. The search warrant included all buildings, structures, places, and vehicles on the five-acre tract and allowed seizure of any physical evidence of controlled substances and implements or instruments used in the commission of the offense of possession and manufacture/delivery of controlled substances. The incorporated affidavit set forth pertinent facts to establish probable cause including:

- On February 21, 2019, the Sheriff received an anonymous letter stating Foster was using and continues to use an overabundance of methamphetamine; Foster has the methamphetamine transported from Arizona through San Angelo; and an individual transporting methamphetamine for Foster was arrested in Arizona with three pounds of methamphetamine while traveling in a stolen vehicle registered in Texas;

- McGhee corroborated the information about the drug seizure/arrest in Arizona by contacting local law enforcement; in that seizure/arrest, a trailer was recovered that, according to motor vehicle records, was registered to Ruth Foster at the same address as the address on Foster's driver's license;

- On April 12, 2019, the Sheriff received a second anonymous letter stating Foster was to receive a "gaggle" of methamphetamine on April 11 or 12, 2019; giving a detailed map of the Weatherby Ranch, including buildings, vehicles, and "hot spots" where Foster stored hidden narcotics; listing "hot spots," including a blue plate in the kitchen, the safe in the tack room, the bunkhouse, the Peterbilt, and Foster's personal pick-up truck; and giving combinations to the key pad on the tack room door and the gun safe;

- McGhee believed both letters to be from the same anonymous source because the second letter explicitly mentioned the first letter, the handwriting was identical, they were received close in time, and the subject matter was the same;

- On January 13, 2017, David Foux, a ranch hand employed by Foster, voluntarily requested assistance from the Sheriff's Office in retrieving his belongings from the bunkhouse on Weatherby Ranch; Foux had had an altercation with Foster over care of goats, Foster went to retrieve a firearm, and Foux fled in fear for his life;

- After retrieving his property, Foux told McGhee he had seen Foster snort methamphetamine in his living room using a black "brake line;" Foster's personal stash was kept in a leather zipper case; Foster offered Foux methamphetamine from a gallon-

14

sized bag containing large shards; and Foster kept this gallon-sized bag in his maintainer machine, also called a motor grader or road plane;

- On February 10, 2017, McGhee went to the Weatherby Ranch, where he saw the premises, buildings, residence, and vehicles depicted in the map received with the second anonymous letter; McGhee entered the residence with consent and saw marijuana and drug paraphernalia in the living room; a deputy with McGhee saw in the tack room methamphetamine residue, a rolled up five-dollar bill with methamphetamine residue, and more than ten firearms lining the walls;

- On February 10, 2017, Foster was arrested for possession of methamphetamine, which was found in a leather zipper case with a black "brake line" as described by Foux;

- A game warden told McGhee that he had seen Foster with multiple firearms in his vehicle; the game warden also said Foster likes to sit on the roof of the residence and watch for people entering the ranch;

- In December 2018, Sergeant Nick Hammer interviewed a female inmate who offered to help catch Foster with narcotics in exchange for getting her out of jail;

- In January 2019, McGhee interviewed a named inmate, Roberson, who told him he had friends who both worked for Foster at the ranch and that one of those friends told the inmate the methamphetamine the inmate was arrested with came from Foster;

- On February 16, 2019, deputies responded to an assault on Weatherby by Foster at Weatherby Ranch; Foster had pushed Weatherby to the ground and struck her vehicle with his vehicle as she attempted to leave the property;

- In March 2019, a "proven credible and reliable" male inmate, an admitted methamphetamine user, told McGhee several of his friends said they buy methamphetamine from Foster;

- In April 2019, Sergeant Hammer spoke with a cooperating individual who said Foster was bringing in a load of methamphetamine from San Angelo to his ranch; the cooperating individual had friends who had bought methamphetamine from Foster; and Foster had been selling methamphetamine for years.

## (4) Analysis

### (a) Misrepresentations

In his first issue, Foster argues the search warrant should be rendered invalid because McGhee, the affiant, knowingly made misrepresentations by omission in the affidavit. As a result, Foster urges, all evidence derived from the execution of the search warrant must be suppressed.

Foster cites *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) in support of his argument. Under *Franks*, evidence must be excluded if a defendant shows an affiant in support of a search warrant made a false statement intentionally, knowingly, or with reckless disregard for the truth, and the statement was necessary to the finding of probable cause. *Bosquez v. State*, 792 S.W.2d 550, 551 (Tex. App.—El Paso 1990, pet. ref'd). This Court and the majority of our sister courts of appeals have determined that the *Franks* rule applies to "material, misleading omissions on the part of the affiant."[3] *Id.* When a defendant makes a *Franks* argument, the defendant has the burden

---

[3] Our sister courts of appeals have extended *Franks v. Delaware* to material omissions as indicated in the following cases: *State v. Skarritt*, Nos. 01-22-00881-CR, 01-22-00884-CR, 01-22-00885-CR & 01-22-00886-CR, 2023 WL 4110853, at *14 (Houston [1st Dist.] June 22, 2023, no pet.) (mem. op., not designated for publication); *Powell v. State*, No. 02-19-00206-CR, 2021 WL 5370163, at *63 (Fort Worth, Nov. 18, 2021, pet. ref'd) (mem. op, not designated for publication); *Gonzales v. State*, 481 S.W.3d 300, 309–11 (Tex. App.—San Antonio 2015, no pet.); *Heitman v. State*, 789 S.W.2d 607, 611 (Tex. App.—Dallas 1990, pet. ref'd); *Bates v. Brown*, No. 07-15-00284-CV, 2016 WL 1072487, at *2 (Tex. App.—Amarillo Mar. 15, 2016, no pet.) (mem. op.); *Burg v. State*, No. 09-16-00200-CR, 2018 WL 1747393, at *3*5 (Tex. App.—Beaumont Apr. 11, 2018) (mem. op., not designated for publication), *aff'd*, 592 S.W.3d 444 (Tex. Crim. App. 2020); *Edwards v. State*, No. 14-21-00432-CR, 2023 WL 4248745 (Tex. App.—Houston [14th Dist.] June 29, 2023, no pet.) (mem. op., not designated for publication). Other courts have declined to extend *Franks* to omissions or applied *Franks* without adopting a position. *See Stacks v. Burnet Cnty. Sheriff's Ofc.*, 565 S.W.3d 860, 866 (Tex. App.—Austin 2018, no pet.) (declining to apply *Franks* to omissions); *Ivory v. State*, No. 06-22-00037-CR, 2023 WL 116735, at *3 n.4 (Tex. App.—Texarkana Jan. 6, 2023, no pet.) (mem. op., not designated for publication) (applying *Franks* to omissions "for purposes of this opinion"); *Allen v. State*, No. 07-13-00066-CR, 2014 WL 3928770, at *5 (Tex. App.—Amarillo Aug. 12, 2014, pet. ref'd) (mem. op., not designated for publication) (assuming *Franks* applies to omissions with no discussion); *Davis v. State*, Nos. 10-10-00405-CR thru 10-10-00409-CR, 2012 WL 662315, at *1 (Tex. App.—Waco Feb. 29, 2012) (mem. op., not designated for publication) (declining to extend *Franks* to omissions); *Sanders v. State*, No. 11-03-00079-CR, 2004 WL 179188, at *2 (Tex. App.—Eastland Jan. 30, 2004, pet. ref'd) (per curiam, not designated for publication) (applying *Franks* without adopting it); *Brooks v. State*, No. 13-20-00085-CR, 2021 WL 2461062, at *2 (Tex. App.—Corpus Christi June 17, 2021, no pet.) (mem. op., not designated for publication) (applying *Franks* without adopting it).

of proving, by a preponderance of the evidence, that an omission was made and that it "was made intentionally or with a reckless disregard for the accuracy of the affidavit." *Heitman v. State*, 789 S.W.2d 607, 611 (Tex. App.—Dallas 1990, pet. ref'd). "If the defendant carries this initial burden, the court will determine whether the affidavit would still establish probable cause for the search if the omitted material were set forth therein." *Id.*

Foster claims that although McGhee included information from the second letter that Foster would receive a "gaggle" of methamphetamine within days, affiant McGhee omitted the letter author's statement that said author would provide notice when Foster was actually in possession of the controlled substance described. There is no question that McGhee both included and omitted from his affidavit the stated portions of the second letter. However, Foster made no attempt to demonstrate on appeal that McGhee's omission of the notice part was intentional or made with a reckless disregard for the accuracy of the affidavit. *See id.* Thus, Foster did not carry his initial burden of proving that any omission made in the search warrant affidavit was made intentionally or with a reckless disregard for the accuracy of the affidavit. *See id.*; *Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.).

We overrule Foster's first issue.

### (b) Conclusory

In his second issue, Foster claims the search warrant was deficient because it was predicated upon conclusory statements and lacked sufficient factual information to establish probable cause. Specifically, Foster contends McGhee had no personal knowledge of the matters necessary to establish probable cause and he failed to state a reasonable basis for how he knew any facts detailed by any of the cooperating individuals or the two anonymous letters. Foster also contends the affidavit did not set forth sufficient facts to establish probable cause that a crime was

17

being committed in that McGhee's statements supporting possession were neither said to have come from a reliable and credible anonymous informant nor were supported by evidence.

A conclusory, "bare bones" statement will not suffice for a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home" is inadequate). The affidavit here, though, goes well beyond the "bare bones" problem of the affidavit cited in *Gates* and alleged by Foster. Supporting probable cause, McGhee's affidavit presented the contents of the two anonymous letters and his corroboration of a portion of the information contained in them; observations of suspected drug residue, paraphernalia, and guns when personally responding to two prior calls at the Weatherby Ranch; details of Foster's previous drug arrest; information about Foster's drug use and possession from a prior resident of the Weatherby Ranch; and information about Foster's drug trafficking from three unnamed cooperating individuals and one named source.

We conclude this information constitutes sufficient non-conclusory facts establishing probable cause. *See Illinois v. Gates*, 462 U.S. at 239.

We overrule Foster's second issue.

### (c) Reliability

In his third issue, Foster claims the search warrant should be invalidated because it improperly credited hearsay contained in the affidavit. Specifically, Foster claims the information received from four cooperating individuals and the anonymous author of the two letters was not reliable.

An informant's reliability is important when the information supplied by that individual forms the basis for a search warrant. *State v. Hill*, 299 S.W.3d 240, 244 (Tex. App.—Texarkana

18

2009, no pet.). When examining the totality of the circumstances, we will consider as highly relevant an informant's veracity, reliability, and basis of knowledge, but we recognize that these considerations are no longer absolutely required to support issuance of a warrant. *See id.* (citing *Gates*, 462 U.S. at 233).

"Hearsay from unnamed informants may be credited by showing the informant has given reliable, credible information in the past." *Id.* (citing *Torres v. State*, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977)). Probable cause may also be found in the absence of an allegation of prior reliability if the information from the informant is otherwise corroborated within the four corners of the affidavit. *Id.* (citing *Abercrombie v. State*, 528 S.W.2d 578, 583–84 (Tex. Crim. App. 1975)); *see State v. Duarte*, 389 S.W.3d 349, 358 (Tex. Crim. App. 2012) ("[T]ips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable.").

A search warrant affidavit is not insufficient merely because it sets out the observations of a person other that the affiant, "so long as a substantial basis for crediting the hearsay is presented." *Jones v. U.S.*, 362 U.S. 257, 269 (1960) *overruled on other grounds U.S. v. Salvucci*, 448 U.S. 83, (1980); *Duarte*, 389 S.W.3d at 355. Further, "[h]earsay-upon-hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level." *Escobar v. State*, No. AP-76,571, 2013 WL 6098015, at *6 (Tex. Crim. App. 2014) (not designated for publication) (quoting *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983)).

In the context of information given to an affiant by a first-time, confidential informant, "probable cause exists if the information given by the informant 'is corroborated, is a statement

against penal interest, is consistent with information provided by other informants, is a detailed first-hand observation, *or* is coupled with an accurate prediction of the subject's future behavior.'" *State v. Elrod*, 538 S.W.3d 551, 558 (Tex. Crim. App. 2017) (emphasis in original).

Here, McGhee credited two anonymous letters believed to be from one source; Foux, a ranch resident; three unnamed cooperating individuals, referred to here as the male inmate, the cooperating individual, and the female inmate; and one named informant, Roberson, for information related to Foster's drug possession and trafficking. McGhee obtained some of his information from and through other law enforcement officers, who are entitled to a presumption of reliability. *See Gonzales v. State*, 481 S.W.3d 300, 312 (Tex. App.—San Antonio 2015, no pet.). All information from the anonymous sources meets one or more of the bases for probable cause listed in *Elrod*, as discussed below. *See id.*

The first letter's information about Foster transporting methamphetamine from Arizona to Texas through San Angelo, but the individual being arrested en route, was corroborated by McGhee. The first letter also claimed Foster used an abundance of methamphetamine on an ongoing basis. This statement is consistent with Foux's statement about Foster's use and corroborated by the female inmate's statement about Foster's possession and McGhee's and another deputy's personal observations of methamphetamine residue and drug paraphernalia during their visit to the ranch.

The second letter's map of Weatherby Ranch was a detailed, first-hand account of the premises at the ranch, and McGhee corroborated the map with his prior knowledge of the location. The second letter also stated Foster was about to come into possession of a large quantity of methamphetamine. Foux, the male inmate, the cooperating individual, and Roberson stated that Foster delivered or intended to deliver methamphetamine, consistent with possession of large

20

quantities. The second letter stated Foster would come into possession of this large quantity around the middle of April 2019. The cooperating individual also stated Foster was bringing in a load in the middle of April. The cooperating individual further stated it was coming from San Angelo, consistent with the first letter's statement about Foster's source.

With respect to Foster's arguments about hearsay, the first and second letters were corroborated by McGhee. Foux's statements regarding Foster's possession were proven true. McGhee credited Foux and the cooperating individual with information about Foster's possession of large quantities of methamphetamine. McGhee credited Foux, the male inmate, and the cooperating individual with information about Foster's delivery.

This information, then, although hearsay, and in some instances, hearsay upon hearsay, had a substantial basis for crediting the hearsay at each level. *See Gonzales*, 481 S.W.3d at 312. The information in the affidavit was either from another law enforcement officer, credible towards a determination of probable cause because it was corroborated, and/or consistent with information provided by other informants whose information was proven to be true. *See Elrod*, 538 S.W.3d at 558. We conclude the information McGhee gave in the search warrant affidavit, considering the totality of the circumstances, provided the magistrate with sufficient facts upon which to determine probable cause existed for the issuance of the search warrant because it established a fair probability that evidence of a particular crime would be found on the Weatherby Ranch. *See id.*

In relying on *Lowery*, Foster's argument regarding this issue essentially invites us to apply the two-pronged analysis of *Aguilar* and *Spinelli* that was significantly revised in *Gates*. *See State v. Huddleston*, 387 S.W.3d 33, 37 (Tex. App.—Texarkana 2012, pet. ref'd). Despite the Supreme Court's *Gates* directive to return to the traditional totality-of-the circumstances test, we recognize that "corroboration still matters" and a reviewing court must still determine "whether the

21

magistrate had a substantial basis for crediting the informant's hearsay." *Duarte*, 389 S.W.3d at 355. The circumstances described above demonstrate a substantial basis for crediting hearsay at each level.

We overrule Foster's third issue.

### (d) Connections and linkages

In issues four and six, Foster urges the search warrant was invalid because it failed to establish probable cause to connect both him and the evidence sought to the property searched. Foster's arguments on these issues are that McGhee's statements tying him and the evidence to Weatherby Ranch were conclusory and not sufficiently supported to form the basis for a valid search warrant.

"Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). Yet, "a search warrant affidavit must be read in a common sense and realistic manner." *Id.* And a magistrate may draw reasonable inferences from the information contained within the "four corners" of the affidavit. *Id.*

In the search warrant affidavit, McGhee stated that Weatherby Ranch was "in the charge or [sic] and controlled by" Weatherby and Foster. When Foster confronted Foux about the goats, Foster told Foux to stay away from them and went for a firearm to enforce his edict. Foux identified the maintainer machine Foster used to store methamphetamine as Foster's machine and said he saw Foster use methamphetamine in Foster's living room. Foster was investigated for assaulting Weatherby at the ranch and impeding her attempts to leave. McGhee and another deputy

previously observed drugs and paraphernalia at the ranch and Foster was previously arrested for possession at the ranch. Foster sat on the roof of the ranch watching people enter.

The author of the anonymous letters linked a delivery of methamphetamine to Foster in April 2019 and indicated Foster possessed methamphetamine at several specific locations on the ranch. The cooperating individual said Foster had acquired a lot of methamphetamine in mid-April 2019 from San Angelo and was transporting it to his ranch.

This information, taken as a whole, and allowing for reasonable inferences by the magistrate, provided a substantial basis to justify the magistrate's conclusion that both Foster and the evidence to be seized were connected to the Weatherby Ranch. *See Davis*, 202 S.W.3d at 157–58.

We overrule Foster's fourth and sixth issues.

### (e) Staleness

In his seventh issue, Foster argues the facts contained in the first search warrant had become stale by the time the search warrant was issued.

Evidence of ongoing criminal activity will generally defeat a claim of staleness. *State v. Le*, 463 S.W.3d 872, 880 (Tex. Crim. App. 2015); *see Bellville*, 2015 WL 1735870, at *4. Narcotics trafficking, one of the criminal activities alleged in the affidavit supporting the search warrant, is criminal "activity of a protracted and continuous nature." *Barrow v. State*, No. 08-00-00449-CR, 2002 WL 125602, at *3 (Tex. App.—El Paso Jan. 31, 2002, no pet.) (not designated for publication).

Here, Foux stated Foster was in possession of a large amount of methamphetamine containing large shards in January 2017 and Foster offered him some. In February 2019, McGhee confirmed the first letter's information about an Arizona arrest during delivery of three pounds of

methamphetamine to Foster. In April 2019, the author of the second anonymous letter said Foster was to receive a "gaggle" of methamphetamine on April 11 or 12. On April 15, 2019, the cooperating individual, who knew of Foster's delivery in April, said they had friends who had purchased methamphetamine from Foster, and the cooperating individual said Foster had been selling methamphetamine for years. The search warrant was executed a month later on May 15, 2019.

This information provided a "substantial basis" for allowing the magistrate to infer that Foster had been involved in the possession and delivery of large amounts of methamphetamine for an ongoing period of time. *See Retana v. State*, No. 11-18-00044-CR, 2020 WL 976935, at *6 (Tex. App.—Eastland Feb. 28, 2020, pet. ref'd) (mem. op, not designated for publication) (the quantity of drugs possessed is a factor to consider in determining intent to deliver). Ongoing criminal activity, particularly drug activity at a defendant's residence, makes the passage of time a less important consideration when evaluating probable cause. *Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012). The Court of Criminal Appeals has indicated its agreement with the United States Sixth Circuit Court of Appeals that the passage of twenty-three months between the last sale and seeking a warrant did not render the information stale in a case in which drugs were being sold out of a residence. *Id.* at 861 (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)). Considering the totality of the circumstances here, we concur with the *Jones* court's allowance for the passage of time in a trafficking situation. We conclude that the trial court did not err in determining that the affidavit provided probable cause that methamphetamine in large quantities was present at Weatherby Ranch.

We overrule Foster's seventh issue.

Considering the totality of the circumstances and deferring to the magistrate as to historical facts, we conclude the affidavit in support of the search warrant provided a substantial basis for the trial court's conclusion that probable cause existed to issue the search warrant. *See McLain*, 337 S.W.3d at 271. Accordingly, we conclude the trial court did not err denying Foster's motion to suppress.

## CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

September 5, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.